Our next case is Apple et al. v. the Undersecretary of Commerce, Squires, of 2024-1864. Mr. Fleming, when everyone is seated and wait a moment, please proceed. Thank you. Good morning, Your Honor, and may it please the Court, Mark Fleming from WilmerHale, together with Gary Fox and Allison Zurich, on behalf of the appellants. Substantive agency rules are subject to what the D.C. Circuit has called the General Commitment to Public Notice and Participation that Congress implemented through the Notice and Comment Requirement. There are two hallmarks of substantive agency rules that are at issue here, and FINTIV satisfies both of them. First, FINTIV produces significant effects on private interests, and second, it's binding on the board. FINTIV harms the private interests of infringement defendants. Can I ask you this question? So let me just tell you what I've been focusing on and thinking about this. So the NHK and FINTIV presidential board decisions apply only to the board and not to the director by their terms. Same thing with the June 2022 Vidal memorandum. It is the director who is the statutory grantee of the institution authority, and as we have said, can on any grounds she wants, putting aside constitutional issues, which is not here, decide to non-institute, to not-institute, which is a classic, maybe even the only classic category of agency decisions committed to agency discretion by law, and also, as it happens, protected by the 314D non-reviewability bar. On the binding piece of it, when the agency decision-maker is not even the subject of the pronouncement and can do anything he or she wants, how does one even clear the threshold of this being binding? Whether or not there's discretion left to the board, which is just a delicatee whose decision is not the final agency decision. I'm very focused on that, so help me. I appreciate the direction, Judge Taranto. I'll do my best to answer. There's a lot in the question. I'll do my best to answer it. The fact that it is possible to appeal to the director after the board has issued a non-institution decision by itself does not change the nature of the rule, which is binding on the board itself, which, in most of the cases, the delegation is still operative. So I was not able to find a case, I think reading 50 or something cases cited by the parties, that involves something like this, where the rule, and I'll call it with a small r, rule, because everybody seems to agree this is that, applied not to the actual final agency decision-maker, but to a mere step one agent. So if I may, in most of the cases over the time that FINTV has been operative, the final decision-maker has been the board. It is certainly true that, as in many situations, it is possible to appeal— It has been. It just means that in most instances the director has not exercised the authority. That's not the same thing. I didn't mean it to be any different than that. It means that the board has been the one that makes the determination whether to institute or not. There have been limited situations where the director has reviewed that. But when the director—when rules are created that bind the ability of the actual decision-maker, regardless of the fact that there may be subsequent appeal or review available, I don't know of any case that says that the bare availability of subsequent discretionary review by a cabinet official or by someone like the director is going to change the effect of 553. 553 subjects all substantive agency rules to the notice and comment requirement. And that happens when you're binding the authority of the decision-maker, whoever it is, even if subsequently an aggrieved party might have a right of appeal to another official or to an Article III court, which, of course, this court has held we don't have in the case of a non-institution decision. But Congress didn't distinguish and didn't differentiate the application of 553 based on whether there was the availability of subsequent discretionary review by someone else. So why isn't it fair to say that the entire body of case law about a substantive rule is about whether there is something legally binding on the—let's just call it the agency or I'll call it the statutory grantee of the authority at issue, which is not the board? I don't know that cases have limited the application of 553 that way. Whenever the agency has purported to create rules that bind, confine, limit the decision-maker's ability to consider particular factors or arguments, regardless of the fact that ultimately the decision might be reviewable by the cabinet secretary, very often the delegee in these situations is going to be the secretary of labor or the attorney general in the case of immigration cases or something like that. There will be an avenue to appeal a decision by an inferior board to a higher official. Can you think of a case or two as an example of factors being used and implemented by lower-level agency decision-makers that ultimately, you know, whatever decision they make will be subject to a higher-level review within the agency? I assure you, Judge Shen, we searched for cases that would embrace precisely this situation. As Judge Toronto prefigured, we didn't find one going either way. So we are left with the language of the statute and the way of the APA and the way it's been applied. So, I mean, I guess your observation that there isn't any case going against you doesn't really move the ball very far in terms of how this court should think about this very specific issue. Well, I think it does move the ball in the sense that if this court were to say that the bare availability of review by a senior official, which is not exercised in every case, it's not exercised in most cases, is enough to escape application of Section 553's notice and comment requirement, that would be a new decision, it would be creating new ground, and I don't think is consistent with what this court in the D.C. Circuit has otherwise said about what kind of binding substantive rule is required to be subject to notice and comment. Because, I'm so sorry. I know that you think that the two October 17th, 2025 pronouncements don't move this case. The government is in agreement with you on the first point, is a little guarded perhaps on the second. That is, the fact is the board is not making these decisions at all anymore. The director is doing it directly. Everybody agrees that because it could go back to the board. Do you have a view about whether if the proposed rule in which the comment period closed just about a month ago, if adopted would, first of all, that rule as I understood the notice of proposed rulemaking, would actually bind the office and therefore the director. That would be, I don't know whether that was intentional or not, but assuming it is, that's a market distinction from the NHK Fintif rule as you call it. Would the adoption of that rule moot this case? I don't think it would, Judge Taranto. I must confess I'm not in a position to argue the merits of that, but it's not the same as Fintif. The proposed rule has different requirements that a petitioner would have to meet in order to have— Do you understand enough about the proposed rule? I know this is— Oh, no, certainly not. Does it purport to displace the NHK Fintif regime? I don't know that it does. There is some overlap. There are ways in which it covers some of the same ground. There are ways in which it covers different ground. I don't think that it is, for instance, a logical outgrowth either way, such that they could, based on this notice of proposed rulemaking, then shift gears and say we're just going to promulgate Fintif. What would be still remaining in NHK and Fintif that hadn't already been subsumed in this rulemaking package, assuming it goes final? Well, you would have other factors, I think, the Fintif factors that are not expressly mentioned. The rule package has other additional considerations. But as for the Fintif factors themselves, I mean, at first blush, it seems to me that everything in Fintif is subsumed in this rule package, and there isn't something still dangling from the Fintif factors that would be a potential yet additional consideration for institution decision makers to make above and beyond what's already expressed in these regulations, assuming they go final. I think that not all of the Fintif factors are picked up in here. For instance, I don't know whether... Would some of them just become immaterial if the rule were in place? I mean, you wouldn't need factors that are just made irrelevant by the rest of it. Right. Is there something like that? For example, if the trial date is set for a time that is before a final written decision would come out, these rules would say, well, that ends the matter. Certainly. So now all the balancing kind of goes away after all that. I think the factor about the stay in Fintif might still survive this rule. And again, let's assume, we're assuming for purposes of this discussion, that the rule gets through notice and comment and is promulgated in its current state, which given the history in this area... Let's assume for the moment there's nothing left in Fintif that would still be open to possible evaluation above and beyond the final rule package. And so what relief could we give to your client if this rule package were to go final tomorrow? Or if, you know, it takes the court, say, three, four months to write an opinion, and sometime within that three, four months, this rule package as is goes final. What relief at that point could we give you if we were to assume that everything and anything that's relevant and material in Fintif has in fact been subsumed in this rule package? There are a lot of ifs in that question, Judge. Yes. Yes. Take them all. You asked me to accept them.  I will accept them. If we have a promulgated rule that by hypothesis leaves nothing left of Fintif, then I think there may well be another challenge to that rule. Under the APA, it may raise different arguments. That would be a new case. But as for this appeal, this appeal just sort of dissolves away. I mean, I'm not in a position to say if I have to accept all the ifs in your question, that there be anything left of this case. That said, I don't think this court can find this case moot at this point in light of the possibility that this rule would be promulgated in the form in which it's proposed, given the last five years of attempts by the office to promulgate regulations. They can open up a new comment period or amend the proposed rules and then have a new rule package. I mean, in order for this court to find this appeal moot, I think that the court would need to find that there is no chance. And it's the government's burden here under the voluntary cessation doctrine to find that it's not going to happen, that the board will resume institution decisions, treating Fintif as binding as it has for the last five years. And they haven't even tried to carry their burden, as the question initially indicated. They don't argue mootness here. So I think the case is live. The delegation to the board remains live. Fintif remains binding, as the government's own letter indicates. So I think the case remains ripe for this court's decision, and the court should decide it. As we've explained, Fintif is binding on the board, as the colloquy, Judge Toronto, I hope I answered your question, indicates. That is sufficient to trigger that requirement of notice and comment. And it certainly affects the interest of government. We haven't talked about this, but the government does have an argument that the room for discretion, even under the NHK-Fintif approach, is enough to make it non-substantive for 553 purposes. I'd be happy to address that, if I may, because I don't think that's true at all, given how the rule operates in practice. And this court and the D.C. Circuit have made clear that you look at what the agency actually does, and not at what the Department of Justice argues as a litigation position. And since the beginnings of the Fintif days, the board has made clear, not only are the factors mandatory, but they direct how they should be weighed, and they preclude consideration of arguments suggesting that the factors don't apply or shouldn't be applied in a particular case. Can I ask you one other kind of precedent question? Assume that the NHK-Fintif rule applied to the director. What precedent is there for that kind of rule being a substantive rule, when the subject of the rule is an unreviewable discretionary decision not to institute a proceeding? A so-called non-enforcement proceeding of the sort that Cuozzo and our Milan case, and I think footnote six in the earlier opinion in this case, indicates is something of a class by itself. Are there other cases in the 553 context involving that kind of non-enforcement decision? I can't think of one specifically in the non-enforcement as you framed it. I mean, I think ultimately the issue would be if this were simply the director saying, these are the factors I'm going to consider. The director then retains the authority to apply them or not apply them in a particular case based on the facts and the arguments that are presented. Under Fintif, as has been applied, the board lacks that discretion. That's the problem. That's why we're here arguing notice and comment. If this were just the director saying, here are some things that I'm going to consider, but I leave myself the authority to deviate even abruptly from those factors in an appropriate case, we'd be having a very different conversation. But the board can't do that. And the board has said repeatedly it can't do that. It said it in Intel versus Coning like a Phillips. It said it in Apple versus Maxell. And they have no cases to the contrary where the board has ever said, notwithstanding the first five factors pointing against institution, we nonetheless have the discretion to institute in light of these other arguments. On the contrary, what the board has repeatedly said is they're outside the purview of our ability to consider because Fintif is precedential and binding. This will give you. I'm sorry. I've got a couple more questions. A lot of your argument, if I read your briefs correctly, seems to hinge on a belief that these Fintif factors affect private interests. But it seems like that particular articulation from the D.C. circuit has sort of gone away and returned back to more affecting individual rights and obligations, having the binding force and effect of law on those parties. And assuming we don't agree with your affects private interests standard, which is looser, then why isn't this more of a policy statement that merely explains how the agency will exercise its broad enforcement discretion as opposed to being something that really does have the legal effect of altering, I don't know, a petitioner's right to anything when the petitioner, as we know, has no right to any institution of an IPR proceeding? So Judge Chen, in AFL-CIO versus NLRB, it's a decision from 2023, the D.C. circuit used the affecting private interests reasoning. And it did so because the issue there was whether the union could choose union election observers of its choice and whether the NLRB's imposition of criteria for who could be an election observer was substantive or not. There's no right to have a union election observer. It's only something that the NLRB made available as what it called a privilege and a courtesy. But the D.C. circuit said just barely two years ago that that affects the interests of the union, even though there's no right. It affects the interests of the union in having fair elections. And so imposing criteria on who can be an election observer is a substantive rule that was subject to notice and comment. So that is not an analysis the D.C. circuit has thrown away by any means. In fact, it referred to Batterton and some of the older cases as the concurrent and consistent approach of the D.C. circuit. Similarly, in Reader v. FCC, which is another case like AFL-CIO that the government has no response to in their briefing. That was a case that involved criteria to upgrade radio stations that the FCC had implemented. There's no right to upgrade a radio station. But the FCC created criteria that foreclosed the petitioner's ability to upgrade their radio station. They challenged that, and they won. Can you remind me, were both of those cases, or either one of them, cases that fall into the seemingly somewhat separate bucket, where even though there had been no previous statutory right, there had been a regulation granting an earlier right, and one of the categories for a new pronouncement being substantive is an alternative alteration of a preexisting right. Was that what was going on? I thought in Reader there had been a kind of 700-mile or 700-something boundary that the FCC was, where overlap, a kind of protection against radio station overlaps, and the FCC was now going to shrink that, thereby making hundreds of new stations, licenses available. And in the AFL-CIO, in the NLRB case, there had been, no, this I don't remember even as well as I remember the FCC one. The certification, three of the five, changes were held to be substantive, two were held not to be, but were the three ones in which there was a specific change of what the union could do in the certification election. So I'm looking at AFL-CIO now, because this is not something I had focused on, nor did the D.C. Circuit focus on it. As I look at it here, I don't see any mention of a preceding regulation that created any kind of regulatory right to have union observers. What the opinion says is, as the Board explained in the 2019 rule, the practice of permitting the parties to be represented dates to the earliest days of the Act, even though the Act itself does not make any provision for the reference to a specific regulation. But I can check and if that's correct. The NLRB basically doesn't do regulation, it just does announcements. It did a rule in the Federal Register, but yes, that's right. But the point is, and this is why I raised it in response to Judge Chen's question, is that the D.C. Circuit has not discarded this idea that it's enough to assert a regulation that is being affected adversely by the agency action. It doesn't need to be a definitive right. What if we were to stick with just the classical effects, the landscape of rights and obligations, binding parties with the force and effect of law, and that's the articulation? I think we would still prevail because... You don't have a right to an institution of an IPR. What's going on here is not altering the substantive standards for adjudicating specific rights, like the grant of a license or the grant of a patent or trademark registration or release from incarceration. This is more about getting access to a discretionary government forum proceeding. And if it's a discretionary government service, qualitatively that feels very different from the ultimate determination of whether rights are won or lost. The fact that it is not a final written decision that decides whether a claim is patentable or not doesn't change the fact that it is a substantive rule, as Your Honor said. It determines whether a petitioner is going to have access to the ability to challenge a claim's invalidity. It's a discretionary power, the exercise of discretionary power. And that's the standard for a general statement of policy. I would disagree with that, if I may. A general statement of policy announces as a general matter what's going to happen, but it does not bind the decision-maker. The decision-maker, I mean, the D.C. Circuit said this again in recent decisions, Syncor versus Shalala, right? A general statement of policy is binding on neither the public nor the agency. The agency retains the discretion and the authority to change its position, even abruptly in a specific case. And in National Mining Association, Judge Kavanaugh, as he then was, said that one indicator of a general statement of policy is it does not impose any requirements in order to obtain relief. An applicant may ignore the guidance without facing any legal consequence. Petitioners here certainly cannot ignore fintive without legal consequence. If they can't meet the factors, they will not be able to get an institution of IPR. And that certainly does affect their interests. And in that way, it also imposes legal rights and obligations, affects their legal rights and imposes obligations. Because it requires them to file a petition much earlier than the one-year statutory deadline. It requires them to give up defenses that they would have in district court if they want to get an IPR. That certainly affects their obligation in a way. And again, I'm not here to say the agency couldn't do it. I'm not saying they absolutely can't promulgate this rule. But if they're going to do it, they have to go through notice and comment because it substantively affects private interests and it is binding on the board as decision-maker. Judge Shannon, you've had your questions answered. Mr. Shaw. We'll give you 25 minutes if you need. Thank you very much. May it please the Court. Waley Shaw for Director Squires. The question in this case is whether the fintive factors are a general statement of policy, which does not require notice and comment rulemaking, or legislative rule, which does. As Judge Chen was saying earlier, a general statement of policy advises the public prospectively of the manner in which the agency proposes to exercise a discretionary power, which is exactly what the fintive factors do. On the other hand, legislative rules alter the landscape of individual rights and obligations, binding parties with the force and effect of law. And I'll note that that is the definition that this Court cited in Sheehan Meadows in 2002, and that is the most recent decision that I found in this Court distinguishing a general statement of policy from a legislative rule. So I would treat that as the binding definition. So under that test, the fintive factors are not law. Everyone must follow the law, including regulated parties, agencies, and the courts, but the fintive factors bind none of those. The agency is not bound because, as Judge Toronto recognized, Congress vested the agency's discretionary denial authority in the director, and the director is not bound by the fintive factors or by board precedent generally. Of course, the board does have to consider the fintive factors, as plaintiffs note, but they do so not because the factors are law, but because the board was instructed to consider those factors by its supervisor, the director. When a supervisor gives instructions to subordinates, that is not law. It would be exceptionally odd if the law permitted the director to delegate his discretionary authority to the board, but prohibited him from instructing the board on what factors to consider in exercising that authority without going through notice and comment rulemaking. Why would that be exceptionally odd? Because the entire purpose of the delegation would be to enable the director to delegate authority and then have his subordinate exercise that authority in line with his policy preferences. And here, in particular, it's a sort of odd. I mean, that was the centerpiece of our earlier decision in this case, but only as to the two substantive challenges, not as to the challenge that if the director is going to do that, which the director certainly has to be able to do, any supervisor does, that doesn't answer the question by what process. Right. And I think it's clear from the AIA in the fact that Congress granted the director unreviewable discretion, specified no statutory criteria for making this discretionary denial decision, that Congress intended the director to be able to engage in nimble decision making to adapt the IPR process to the needs of the patent system and the economy at a particular time. And so that kind of sort of nimble decision making really is not compatible with the requirement that all instructions to the board regarding how it's to exercise the director's discretion must go through notice and comment rulemaking. Can you speak to Mr. Fleming's reference to NLRB and Reader as suggesting that, at least for the D.C. Circuit, that court still considers the effect on private interests inquiry as being relevant to whether a rule is a substantive rule? And if so, then that starts to sound like very close to the standard for standing of a legally protected interest, concrete harm, and so forth. So you can more easily connect the two things. Yeah. I mean, those two standards are absolutely not the same. So maybe I could answer that question in two parts. First, just to distinguish some of those cases, I think in all of the cases that plaintiffs cite, the rule governs how the agency determines legal rights. Now, in some cases, perhaps the regulated party doesn't have an actual right to obtain the license or to obtain parole or whatever. But ultimately, the agency's action will determine whether a prisoner is released from incarceration, whether an applicant for an FCC license actually receives that license. So it is actually directly acting on legal rights. This case involves something entirely different.  Mr. Fleming was specifically referring to NLRB and a case called Reader. Yes. Telling us that in those cases the D.C. Circuit reaffirmed what it had said long ago in Batterton about affecting private interests is enough to make something a substantive rule. Could you comment on that? Yes, absolutely. I would just point out that, first of all, the D.C. Circuit has not always been consistent in its pronouncements. It's said that its decisions in this area have sometimes been difficult and  But what I can point to are, for example, the I'm going to exaggerate here, but it seems to me half of the judges in four dozen of opinions have, including now Justice Kavanaugh and many others, have said the translation of the statutory standard into the next level of verbiage has not been a very successful one because the next level of verbiage still leaves things incredibly murky. And somebody ought to do something about that. But there nevertheless is, at some practical level, a distinction between I have an interest in something and I have a right to it. And if you're going to provide an answer to whether there is some difference in the formulation or no formulation, what are the concrete things here that make this not, and now I'll just state a pure conclusion, a substantive rule? Yeah. I think the difference is between the idea that a rule just simply has some significant impact or a substantial effect on parties versus an actual legal effect on parties, which is what I think Judge Kavanaugh relied on in National Mining Association. So I can cite a number of cases from the D.C. Circuit that sort of walk away from this substantial effect test. Was there something like that in either Reeder or the NLRB case? I cannot remember precisely how the analysis in those cases went, but certainly, for example, in the American Hospital Association case, the D.C. Circuit expressly noted that it had retreated from a substantial impact test. In the National Mining Association case, the D.C. Circuit sort of specified the standards that it expected applicants for a mining permit to meet, and the applicants sued. They said that this was a legislative rule because it effectively spelled out what they needed to do in order to obtain a permit, and here is what the D.C. Circuit said in response. An agency action that – I'm sorry. As plaintiffs, the EPA will not issue the permit unless its recommendations are followed, but while regulated parties may feel pressure to voluntarily conform their behavior because the writing is on the wall about what will be needed to obtain a permit, there has been no order compelling the regulated entity to do anything, and therefore, the court found that the rule was not legislative. The court also said that the most important factor in determining whether something is a general statement of policy is the actual legal effect or lack thereof of the agency action in question on regulated entities. So again, it's not referring to sort of any practical effect on parties' interests, but on the actual legal effect of the rule on the parties. We can also look to – So these standards, if not complied with, would mean that a particular mechanism for canceling a patent is unavailable, where that mechanism provides for easier standards to meet than at least the main alternative mechanism. Is that – does that have an effect on legal rights or not? And if so, why not? No, it is not an effect on legal rights because the IPR – the institution of an IPR – again, as Your Honors noted, no party has a right to an IPR. An IPR is an entirely discretionary and optional proceeding in which the USPTO chooses to dedicate its resources to reconsidering a prior patent grant. That is a decision that falls within the same kind of classic unreviewable discretion as the decision to initiate a prosecution or to initiate an enforcement proceeding. So that is simply not the kind of direct effect on a party's legal interest I think that National Mining Association was referring to. I would also cite cases outside the D.C. Circuit, for example, the Mataluna case from the Ninth Circuit, which expressly rejected the idea that a substantial impact on parties is a binding legal effect. And it specifically noted that a diminished likelihood of obtaining some benefit to which the applicant has no right is not the kind of binding legal effect that makes something a legislative rule. Can I – Yes. Do you have a view about whether this case will be moot if the proposed rule is adopted by the director? It's a little bit hard to say because there is substantial overlap between the proposed rule and the NHK infinitive decisions. However, the proposed rule does not expressly note whether the – you know, what the ongoing status of the NHK infinitive decisions will be, and I know that that's an issue. I think that's been raised in some of the comments. So it's not absolutely clear to me from the – Well, I wonder, how would we think about that, with this question? Certainly, I think this is certain, there are cases in which the Supreme Court, while a case is pending, is told, you know, the state law that was challenged here has just been replaced by another one. And the Supreme Court has – I guess I'm thinking of one of the Second Amendment cases a few years ago. And the Supreme Court, over dissent, said we think that the challenge to the old law is moot, send it back, look at the new law. Even though – I'm not quite sure what the analysis was, but I guess I vaguely recall if there was analysis at all. It is something to do with the fact that there may be overlap in the legal issues, but we don't just decide legal issues. In fact, the particular nature of the new regime may call for a different legal analysis. So why would we go through the process of doing the legal analysis on the now outmoded regime? Why wouldn't something like that apply here? Because we're talking about how much discretion is there, how much effect is there. Maybe the new regime would mean that it would be extremely rare for there to be a ground for non-instituting under the fintive precedent that isn't – that's not already covered by the new rule. And maybe that affects the analysis. How do we think about the question which may well come up in the next few  I don't know whether – and I know you're going to say we'll brief it then when we get to it. But how should we be thinking about that? To be honest, I'm not familiar with the Supreme Court decision that Your Honor is referring to. I certainly agree that the recent developments – And carrying in public? No? I'm sorry. But I certainly agree that the recent developments have substantially changed the operation of the IPR system and have diminished the ongoing practical significance of the issues in this case. We have not tried to sort of meet the burden of showing that this conduct is unlikely to occur as I think as would be required under voluntary cessation doctrine. But certainly if this court feels that the case is moot or that there's no longer an ongoing controversy here, we would not object to the dismissal of the case. Well, do you know the agency's position on whether these proposed rules as they stand completely subsume or render irrelevant the existing fintiff factors? I mean, certainly nobody more than the agency would know the answer to that question. Unfortunately, I think the answer is that the agency does not currently have an announced position on the impact on NHK and fintiff decisions. Does the agency know when it might go final? I have to ask. I know your answer. I'm sorry, I don't have any information. We're in a bit of a race, you see. I mean, the agency is a busy department. We're a busy court. We have to be tasked with writing an opinion. I don't think we can get it out in just a matter of days or weeks. But at the same time, courts don't like to waste their time. I'm sorry. I don't have a solution to offer to the court on that dilemma. Unfortunately, I just don't have any further information that I can provide about the NPRM and what's likely to occur there. Do you know was either NHK or fintiff or the June 22 new rule memo published in the Federal Register? And I'm assuming not, or I would have seen a citation. And if not, why not under 552? This is not an issue here, I realize that. But do you happen to know? If it's a general policy, 552, at least as a general matter, requires publication in the Federal Register. Unfortunately, I do not know the answer to that question. If I could, Judge Toronto, if I could, oh, I'm sorry. I just wanted to briefly make the point that, you know, the fintiff factors are a multi-factor test. And I think plaintiffs would have it that having a test means establishing or really a multi-factor standard for evaluating these kinds of cases. And I think plaintiffs would have it that having any multi-factor standard means establishing some bar that all applicants must meet and therefore establishes a legal rule of some sort. And that's just not the case. Their argument is that when you look at the implementation and that can be a relevant inquiry, you will see that these factors really do hardwire outcomes in many, many different ways. And even if the director retains some authority to, or just straight-up authority to review any institution or non-institution decision, again, as a practical matter, we know from the numbers that none of those non-institution decisions get flipped by a director on review. So what we have is functionally speaking, practically speaking, a very outcome determinative, pretty rigid set of factors. And if all that were true, then can we really ignore all that and just look at the language of the factors alone and the statutory right the secretary theoretically holds to take a look at any institution or non-institution decision? I think there are multiple reasons why that is not enough to establish, why that argument does not establish that definitive factors are a legislative rule. First, as your Honor pointed out, the director is the ultimate decision maker for the agency as really has been confirmed by the recent guidance in which the director has taken on that decision himself and is making those decisions personally. But second, I think that there is no difference between the wording of the factors and the way in which they've been implemented. So we cite a number of decisions in our case, I'm sorry, a number of decisions in our brief in which the board has taken a very holistic and fact-specific approach to applying definitive factors. So, for example, we... Aren't there, you know, there were a lot of cases to read here. It's more than a little hard for me to retain my memory of them. I thought that there were a number of cases that say it's true that the practical effect is not, you know, 100%, but it's strong enough that we were going to find 553 notice and comment rulemaking required. There are some cases in which some courts have found that because the agency treated a rule as effectively binding and requiring certain results based on the finding of certain facts, that that was enough to establish a legislative rule. So, for example, in the Mataluna case, the Ninth Circuit said that, you know, if a rule so fills out the statutory scheme that once you find a certain fact, then a certain outcome must follow, that that... I guess I'm thinking that there are cases... I was thinking of a different group of cases, though I can't give you any names, in which the government says, oh, look, there's this residual discretion, it's never particularly binding, and the court says that's just not enough. In the real world, as implemented, these factors have, we can tell, been consistently decisive. Yes, I think there are some cases to that effect. So, for example, Plaintiff's site, the Pickus decision, in which there was sort of an extremely formulaic... It's the parole. That's the parole decision, in which there was an extremely formulaic rule that dictated how many months of imprisonment a particular prisoner must go through. And, you know, there was some formula that involved calculating a score, and then once you have the score, you would know how many months they have to be in prison for. And so there are some cases to that effect. I certainly don't agree that any of those cases would apply here. Again, in practice, if we do look to what the board actually did, the board has looked to other factors. By the way, just on the Pickus decision, so, I mean, that would be... It would be very odd to call that a non-enforcement decision, although language being what it is, I can imagine somebody saying it, but the fact is it's a decision for the United States government to keep somebody in jail. That's not just a non-initiation of proceeding. And second, that was also not a matter where there was unreviewable discretion, because parole decisions were, in fact, reviewed at least through habeas. Is that right? I'm not sure about the last point, but I would certainly agree with the point that... And the reason I mention that is that the D.C. Circuit opinion in that case says we're not going to decide whether the parole decision is committed to agency discretion by law. So that led me to think, well, really? Parole decisions were... I think it was pretty standard law that, as you would expect, that habeas is a remedy for an unlawful parole decision, with all kinds of deference, of course, but it wasn't unreviewable. I'm not entirely familiar with that scheme, but what I can say is that, in addition to the factors that Your Honor noted in distinguishing Pickus, that it's also true that, again, the ultimate agency decision acted on a particular regulated party's rights. So, again, if you were granted parole, you were released from prison, and if you were not, then you had to stay in prison. And that is not the kind of regime... Now you're just playing with the word right, right? Nobody had a right to parole. Right. No, I'm not contending that there was a right to parole. What I'm saying, I'm trying to distinguish the Pickus regime from this case in the sense that, in Pickus, there was direct action on a... The agency directly acted on a regulated party's, on a prisoner's right to be free from incarceration. Whereas, in this case, the FINTF factors do not act on patent rights. All they do is they govern whether the agency chooses to allocate its resources to an entirely discretionary decision... I'm sorry, to an entirely discretionary proceeding to reconsider a grant of patent rights. And so that in itself, you know, FINTF doesn't specify any standards for either upholding or striking down a patent claim. All it does is govern the initiation of an agency proceeding that, again, a decision that's entirely allocated to the discretion of the director and is unreviewable. Anything further, counsel? Yes. If I may, just to return to the point that Judge Toronto started with, I don't think it would be creating new ground, as plaintiffs have said, to sort of recognize that, you know, that this case is different from others in that the director is the ultimate wielder of the discretionary denial authority and that this guidance only acts upon the board. And, in fact, this Court's decisions in Splain and Coalition for Common Sense all support that proposition. And I would also point to the Ninth Circuit's decision in Erringer where the Ninth Circuit recognized as a factor weighing against recognizing something as a legislative rule the fact that the rule in question only acted upon the lower levels of the Medicare decision-making process and did not ultimately bind the agency. And so I think those all support the proposition that where a lower-level agency decision-maker only has to follow the guidance of a supervisor, the one who actually wields the authority, that that is not the kind of binding legal effect that makes a particular rule or makes guidance a legislative rule. Thank you, counsel. Mr. Fleming, three minutes for rebuttal. Thank you, Your Honor. Judge Taranto, I don't know if you were thinking of this case in particular, but General Electric v. EPA talks about the situation where you have a rule that might have some exceptions to it, but the fact that a substantive rule that governs the standard cases might have some exceptions doesn't make it any less substantive. And besides, although Mr. Shaw didn't come out and say it, the only exceptions they've come up with where the board doesn't have to non-institute, doesn't have to, has the discretion to institute when the five fintive factors point the other way, is in cases of compelling merits or a soterra stipulation, neither of which is operative anymore. But even still, those are just minor exceptions that don't change the fact that it is a substantive rule. Mr. Shaw didn't read the language from AFL-CIO Judge Chen in response to your question, so I want to make sure that I give it to you. This is on page 1041 of the opinion. It matters not that the board has so characterized its policy of allowing election observers because we examine how the rule affects not only the rights of agreed parties, but their interests as well. The rule's effect on regulated parties' substantive interests in choosing their own election observers suffices to remove it from the category of procedural rules under the APA and therefore subject to notice and comment. The National Mining Association case and the Mataluna case that the Department of Justice relies on, the reason that the agency actions in those cases were not subject to notice and comment is because they weren't binding on the agency. Then-Judge Kavanaugh, now Justice Kavanaugh, referred to the EPA rule in National Mining Association as meaningless. You didn't have to observe it when you were filing your materials with the EPA. Same thing with Mataluna. The district director's authority in deferred action cases was completely unfettered by the guidance. That is not the case with respect to Fintive. You only have to look at the cases that we cite, which Mr. Shaw did not address, cases like Supercell v. Gree, Intel v. Koning-Lenka-Phillips. There were all kinds of arguments made, including by parties that are appellants in this case, that the Fintive factors should not be applied because of the particular circumstances in those cases. The board repeatedly said it could not countenance those arguments. It would not address them. The policy issues raised by Petitioner are not within our purview to consider in light of binding precedent. And I would just say as a matter of conclusion, it's particularly in situations like this that notice and comment procedures are critically important. This Court has held that the federal courts lack jurisdiction over our claims that Fintive is contrary to law and is arbitrary and capricious. Congress's check on agency action through public comment is the only check left and the only thing holding the agency accountable. Unless the Court thinks that it is just a matter of bureaucracy and time before a rule could emerge from notice and comment, whether we're talking about putting the Fintive rule through notice and comment or the new rule where the comment period has just closed, let's remember the PTO is not the only organ of the executive branch here. There has to be consultation with the rest of the executive branch that also upholds the public interest. And it is far from a foregone conclusion that the Office of Information and Regulatory Affairs, for instance, is going to approve of this. So I don't think the Court can assume that Fintive would make it through notice and comment. I don't think the Court can assume that the current proposed rule will make it through notice and comment and be promulgated. And I think the Court should decide the case, which Mr. Shaw does not contend is moot, as it has been presented, find that the Fintive factors do indeed bind the board, they affect private interests, and therefore they must have been promulgated through notice and comment. And because they were not, they should be set aside and the district court's judgment should be reversed. I thank the Court very much for its attention. Mr. Fleming, we thank both parties. The case is submitted.